UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK BAKER,

                Petitioner,

-vs-                                              Case No.  8:05-cv-1218-T-24MSS

SECRETARY, DEPARTMENT OF CORRECTIONS,

                Respondent.
_____/

## **ORDER**

This cause is before the court on Patrick Baker's petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Proceeding pro se, Baker challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.  A review of the record demonstrates that, for the following reasons, Baker's petition must be **DENIED**.

## **BACKGROUND**

On November 13, 2002, Baker pled guilty to driving while his license was suspended in case no. 02-08327CFANO and to aggravated battery in case no. 02-9409CFANO.[1]  He was released on his own recognizance pending sentence.  Pursuant to his plea terms, he would receive a fifteen year sentence on the aggravated battery charge if he failed to appear for, or was arrested prior to, sentencing which was scheduled for January 6, 2003.

Within two weeks, Baker was arrested on other charges. (Transcript of Evidentiary

---

[1] He also admitted to violating his probation in case no. 01-19526CFANO. In addition, he entered pleas in case nos. 01-01708CFANO and 01-9695CFANO. In the present federal petition, Baker challenges only his conviction and sentence in case nos. 02-08327CFANO and 02-09409CFANO.

Hearing, November 26, 2003 (TEH), at R 215-216).  On March 31, 2003, Baker was sentenced to 10 years incarceration on the driving while license suspended charge in case no. 02-08327CFANO and 15 years incarceration on the aggravated battery charge in case no. 02-9409CFANO. The sentences ran concurrently. (Exh. 1, R 244-245).  Baker did not appeal his convictions and sentences.

On June 2, 2003, Baker filed a pro se rule 3.850 motion to vacate, set aside, or correct sentence in which he raised three grounds. Baker asserted 1) his plea was unknowing and involuntary because he was taking prescribed medications and was incompetent at the change of plea hearing; 2) his trial counsel rendered ineffective assistance by failing to raise the medication competency issue at the change of plea hearing; and 3) his trial counsel misadvised and coerced him into entering a plea.

On August 7, 2003,  the state trial court summarily denied ground three and directed that an evidentiary hearing be held on grounds one and two. The state trial court conducted the evidentiary hearing on November 26, 2003.[2]  At the conclusion of the November 26, 2003 hearing, the state trial court denied Baker's rule 3.850 motion. The state trial court entered a written order of denial on December 8, 2003.  (Exh. 3 at R 255-258).

On January 4,  2004, Baker appealed the denial of rule 3.850 relief. On February 18, 2005, the state district court of appeal per curiam affirmed the denial of relief. *Baker v. State*, 2005 Fla. App. LEXIS 1836 (Fla. 2d DCA Feb. 18, 2005)[no table found]. Following denial of rehearing, the mandate issued April 25, 2005.

---

[2] The original evidentiary hearing was undertaken on October 24, 2003.  During his testimony, Baker indicated he did not understand what was happening, and the state trial court stopped the proceedings and advised Baker's counsel to reset the case when Baker could follow the proceedings.

Baker then timely filed the present pro se 28 U.S.C. § 2254 petition, dated June 8, 2005. Baker raises two ground for relief.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## DISCUSSION

### Ground One

Baker contends that his plea was involuntary because he entered the plea while he was under the influence of prescribed medications for his "bipolar and seizure conditions." Baker claims that the state trial court was obliged to inquire into his competence before accepting his plea.

In the order denying rule 3.850 relief, the state trial court addressed the testimony and made factual findings adverse to Baker:

> On November 26, 2003, the Court held an evidentiary hearing on this matter. Appointed counsel represented the Defendant for purposes of the

hearing. The Court heard testimony from Dr. Samuel Bailey, medical director of the Pinellas County Jail, former counsel, and the Defendant.

There were two issues to be addressed at the hearing: whether the Defendant's plea was involuntary because of the effects of prescribed medication and whether trial counsel was ineffective for failing to bring the Defendant's lack of understanding of the consequences of his pleas to the attention of the Court. Other claims were summarily denied without hearing in this Court's August 4, 2003 order.

### DR. BAILEY'S TESTIMONY

Dr. Bailey, in his capacity as medical director of the Pinellas County Jail, provided medical care to the Defendant at the time of his pleas in the above-styled causes. He testified he had reviewed the Defendant's medical chart to refresh his memory prior to testifying in this matter. Regarding medications administered to the Defendant on or about November 13, 2002, Dr. Bailey testified that while incarcerated at the jail from May to November 2002, the Defendant took Neurontin and Depakene or its generic version, valproic acid. Dr. Bailey testified that he had never treated another patient who complained of the same side effects to Neurontin or Depakene as did the Defendant, those being confusion and/or amnesia, and that although the Defendant did complain of seizures while taking these medications at the jail, his were not classic seizure descriptions and there were no witnesses to them. The doctor acknowledged that valproic acid may cause dizziness and can interfere with cognitive thinking in some patients.

Throughout the Defendant's incarceration, he communicated with the medical staff via 82 forms. Dr. Bailey testified that his review of these forms indicated that the Defendant clearly and coherently made his needs known throughout his stay.

### DEFENDANT'S TESTIMONY

The Defendant testified that as a result of the medications given to him at the jail he suffered confusion, dizziness, abnormal dreams and headaches and that at the suggestion of a nurse at the jail, he initially complained to his counselor, Jack Conley, about the side effects rather than to the medical staff. The defendant later testified that he told a doctor at the jail about his symptoms, but not Dr. Bailey. That person was not named or called to testify at the hearing. When questioned about his understanding and recollection of his change of plea hearing, he testified that he felt confused as a direct result of his medication, that he had advised trial counsel of his medical status and medications, but could not recall specifically doing so, and that his court date

on November 13, 2002 was a motion for furlough as a result of his mother's declining medical status. Additionally, the Defendant testified that trial counsel prompted all of this responses to questioning from the Court, and that he had not reviewed the plea form with counsel prior to appearing before the Court.

After his direct and cross-examinations, the Court inquired of the defendant regarding several documents in the court file and matters in the transcript of his change of plea. Those matters included the Defendant's putative cooperation with law enforcement, his various pro se motions and correspondence to the Court throughout the pendency of the case and a recent motion to mitigate sentence that references many details of his change of plea.

### TRIAL COUNSEL'S TESTIMONY

The State Attorney called the Defendant's prior counsel, Ray Rodgers, a former assistant public defender. He testified that he knew the Defendant suffered from epilepsy but had never observed any effect on the Defendant's ability to comprehend during the two years in which he represented the Defendant in various matters, with the exception of the day the Defendant suffered a seizure in court on a previous case. Counsel recalled that he met with the Defendant approximately 20 times during the two-year period.

Counsel corroborated that on the day of the Defendant's plea only a motion for furlough was set before the Court. However, the presiding judge made an offer, which counsel and the Defendant discussed for approximately 30 to 35 minutes, which the Defendant chose to accept *despite* counsel's advice to the contrary. Counsel testified that there was no representation of a probationary term upon the Defendant's return on January 6, 2003. Mr. Rodgers further testified that he recalled paraphrasing the plea form while reviewing it with the Defendant. In sum, counsel testified that the Defendant was "very lucid during the proceedings," and that he did not direct the Defendant's responses to the Court's questions

. . . .

The Court finds counsel's testimony more credible than that of the Defendant, and specifically finds that the only portion of the Defendant's testimony that is credible is that which is corroborated by counsel's testimony: that the only hearing set before the Court on November 13, 2002, was a motion for furlough. The remainder of the Defendant's testimony lacks indicia of truthfulness. This finding is based not only on the Defendant's testimony itself, but his demeanor on the stand. . . . .

(Exh. 3 at R 255-258).

The factual findings of the state trial court are accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1). Baker has not overcome the findings with clear and convincing evidence.

With regard to his procedural and substantive federal due process claims regarding the matter of his competency, the clearly established federal law, as determined by the Supreme Court, is set out in *Drope v. Missouri*, 420 U.S. 162 (1975), *Pate v. Robinson*, 383 U.S. 375 (1966), and *Dusky v. United States*, 362 U.S. 402 (1960). Under *Dusky*, the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402 (internal quotation marks omitted). Under *Drope* and *Pate*, the standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a *bona fide* doubt as to mental competency. *Drope*, 420 U.S. at 180; *Pate*, 383 U.S. at 385 ("Where the evidence raises a '*bona fide doubt*' as to a defendant's competence to stand trial, the [trial] judge on his own motion must impanel a jury and conduct a sanity hearing . . . .").

A defendant must also be competent at the time he pleads guilty, and the standard governing competency to plead guilty is the same as that governing competency to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398-99 (1993). Since the standard for determining

competency to plead guilty is the same as the standard for determining competency to stand trial, whether or not the defendant is taking a medication is a factor, but is not determinative of whether the defendant is competent. Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial. *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). The defendant must present evidence demonstrating that the dosage given him affected him adversely so as to raise a doubt as to his ability to consult with his lawyer and to have a rational understanding of the proceedings against him. *See Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987).

The record of the motion for furlough/plea hearing reflects that Baker answered questions clearly and responsively and acknowledged that he understood his rights. Baker did nothing to lead counsel or the state trial court to question his competency at the time. These factors indicate that Baker was competent when the state trial court judge accepted his plea and that no further inquiry was necessary to determine his competency. The state trial court judge was in the best position to assess Baker and his demeanor during the plea proceedings, and it can be reasonably determined from the state record that objective facts known to the court at the time of Baker's plea did not create a *bona fide* doubt as to Baker's competency to proceed. Accordingly, it is objectively reasonable to reject ground one to the extent it raises a procedural competency claim.

It is also objectively reasonable to conclude Baker has not established a claim of substantive incompetency. His testimony alone is insufficient to establish that during the plea hearing, he was unable to consult with counsel and the state trial court or understand the proceedings against him. Moreover, in his rule 3.850 proceedings, Baker did not

establish that the effects of his medication prevented him from entering a knowing and voluntary plea.

Baker asserts that his trial counsel informed the state trial court judge that Baker was an epileptic and that Baker had an epileptic seizure while in the courthouse. It is apparent from trial counsel's testimony at the evidentiary hearing that the seizure to which trial counsel referred did not occur before the judge who accepted Baker's plea on November 13, 2002. (TEH at R 194).

The state record shows that Baker's competency to proceed was not at issue at the time of the plea proceedings on November 13, 2002. Counsel's testimony at the evidentiary hearing on the rule 3.850 motion reflects that during the approximately two-year period counsel represented Baker, he had met with Baker fifteen to twenty times. Counsel had found Baker "comprehending" except during the one seizure in the state trial court. (TEH at R 194-195). Counsel testified that on the day Baker entered his plea, Baker had questions about the sentence being offered. At the November 26, 2003, evidentiary hearing on the rule 3.850 motion, trial counsel unequivocally stated that Baker was completely lucid on at the time he entered his plea (November 13, 2002) as Baker had been the other times they had met, with the exception of the time counsel saw Baker have one seizure in the state trial court. (TEH at R 198).

The medical director's testimony reflects that the medication Baker was prescribed would not have caused the side effects Baker claims to have experienced. Counsel's testimony further bears out that the fact that Baker was very lucid during the plea proceedings, and that counsel did not prompt Baker to ask questions during the colloquy,

(TEH at R 201, 207). In addition, after he was rearrested, Baker was able to author motions with an understanding of what had occurred at the November 26, 2003 plea hearing. (TEH at R 216).

The testimony at the evidentiary hearing, as well as the record of the plea proceeding, in which Baker made coherent statements, supports the objectively reasonable conclusion that Baker could rationally consult with counsel, and that Baker understood the nature of the charges against him. (TEH at R 215). Accordingly, the state court's decision resulted in a reasonable application of clearly established federal law as determined by the United States Supreme Court at the time and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas corpus relief.

### Ground Two

Baker contends that his plea was involuntary and that his counsel was ineffective because counsel coerced Baker into entering a plea "with false representation." He claims that his trial counsel told him he would receive a sentence of five years probation in exchange for his cooperation with law enforcement. The state trial court summarily denied this claim in Baker's rule 3.850 motion, finding that, there was no mention of a sentence of less than five years incarceration at the November 26, 2003 plea proceedings and in Baker's plea form. (Exh. 1 at R 226-227).

A petitioner challenging a guilty plea based on a claim of ineffective assistance of counsel must meet the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). First, the petitioner must show that

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment. Counsel's performance is constitutionally deficient when it "[falls] below an objective standard of reasonableness." *Strickland* at 688. "[T]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland* at 688)

Second, the petitioner must show that deficient performance prejudiced the defense. *Strickland* at 693-96. To show prejudice in the context of a guilty plea, the defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial." *Hill,* 474 U.S. at 59. *Strickland* counsels that if a defendant fails to make a proper showing under one of the prongs, the court need not consider the other prong. 466 U.S. at 697.

Baker does not meet either prong of *Strickland*. As the state trial court observed, there was no mention of a sentence of less than five years incarceration in the plea proceedings or in Baker's plea form. Moreover, the state trial court clarified the terms of the plea, including the possible sentence, by thoroughly inquiring of Baker during the change of plea hearing.

The state trial court could reasonably conclude that Baker's plea representations gave rise to the presumption of verity accorded his solemn declarations made in open court. Baker has not overcome those representations with his allegations in the present petition. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (holding that "solemn declarations in open court carry a strong presumption of verity [and] the subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal"). Baker's assertions on state and federal collateral attack do not overcome the assurances Baker gave the state trial court as to his understanding of his potential sentence. The plea proceedings provide sufficient support for the objectively reasonable conclusion that Baker's plea was knowing and voluntary, and entered with full awareness of the nature of the charge and consequences of his plea.

Moreover, counsel's testimony at the rule 3.850 evidentiary hearing shows that counsel had not misrepresented Baker's sentencing outcome. When asked by the state trial court, counsel confirmed that he did not discuss with Baker that Baker was going to receive a sentence of five years probation. (TEH at R 207) Given that the state trial court found counsel's testimony credible, Baker cannot show that his counsel rendered any misadvice. The state court's decision resulted in a reasonable application of either of *Strickland*'s prongs and Baker has not shown that his counsel rendered ineffective assistance of counsel.

Accordingly, the Court orders:

That Baker's petition for writ of habeas corpus (Doc. No. 1) is denied, with prejudice. The Clerk is directed to enter judgment against Baker and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue only if the

applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 4, 2007.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Patrick Baker, pro se